UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 13 |
| DONALD WAYNE HARSHAW, | ) | Case No. 15-22342 |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| ELIZABETH ANNE HARSHAW, | ) | Appeal from the United States |
| | ) | Bankruptcy Court |
| Appellee/Plaintiff, | ) | Hon. James R. Ahler |
| | ) | (Adversary Proceeding No. 15-2115) |
| v. | ) | |
| | ) | Cause No. 2:19-CV-144-HAB |
| DONALD WAYNE HARSHAW, | ) | |
| | ) | |
| Appellant/Defendant. | ) | |

**OPINION AND ORDER**

The matter before the Court appears, on its face, to be a complicated convergence of family law, arbitration rules, the bankruptcy code, and appellate review. In reality, it presents a simple question: can individuals who are not married get divorced? The answer is no, and the judgment of the Bankruptcy Court below will be reversed.

**A.     Background**

**1.     *Factual Background***

Once married and divorced, Plaintiff Elizabeth Harshaw ("Liz") and Donald Harshaw ("Don") moved back in together in 1999. In retrospect, this was not a good decision for Liz. The record reveals that she lived a life of virtual servitude, taking care of the home, the family finances, Don's two special needs nieces, a special needs grandson, and Don, who suffered from mental health issues, heart disease, and colorectal cancer. Don showed his gratitude for Liz's service by leaving her in 2013 (without an income as she had quit her job to manage the household), canceling

her heath and auto insurance coverage, and refusing to pay utilities for the home the couple had shared.

**2.    *The State Court Lawsuit***

Understandably displeased with the way things turned out, Liz filed a Complaint for Damages and Partition of Property against Don in September 2013. While the complaint is not in the record before the Court, the allegations are described as follows:

> [Liz's] complaint requests partition of [the marital home], in addition to specific equitable relief based upon the lengthy period of co-habitation of the parties. [Liz's] theories of recovery include, but are not limited to: breach of express and/or implied contract; unjust enrichment; and *quantum meruit*.

(ECF No. 8-5 at 2).

Rather than litigate their dispute, the parties agreed to submit the matter to binding arbitration. Daniel A. Gioia, an attorney in Valparaiso, was selected as the arbitrator. The arbitration was conducted on June 9, 2014, with the parties presenting evidence via "summary presentation" of their respective counsel.

Sometime thereafter (the arbitration order is not dated), the arbitrator issued his Final Order of the Court on Binding Arbitration (ECF No. 8-5) (the "Arbitration Order"). After reviewing the couple's history in great detail, the arbitrator focused on Liz's entitlement to "relief upon a showing of an express contract or a viable equitable theory such as an implied contract or unjust enrichment." (*Id*. at 14). The arbitrator noted that Indiana does not recognize "common law marriages," but that a non-married cohabitant can still "recover based on equitable principles." (*Id*.). Relying on the benefits conferred by Liz to Don, the nature and character of the services rendered, Don's stated intention to compensate Liz, and Liz's expectation of compensation, the arbitrator found that Liz was entitled "to equitable relief based upon the theories of breach of

2

promise and/or contract, express or implied, unjust enrichment, reliance to her detriment, and *quantum meruit*; as well as the other prevailing law for the State of Indiana." (*Id*. at 15–16).

Having determined liability, the arbitrator turned to damages.

> The Arbitrator finds, based upon the above findings and conclusions, that the plaintiff, Elizabeth A. Harshaw, is hereby awarded the sum of Four Hundred Thirty-Five Thousand Dollars & 00/100 ($435,000.00), plus post-judgment interest…. The Arbitrator further finds that payment of this amount to the plaintiff shall be accomplished by the defendant either through assignment of his pension and/or retirement benefits; or by Qualified Domestic Relations Order (QDRO), to be approved and effectuated and ordered by the Court; and/or by payment from Don and [Liz] in any other manner acceptable to both parties. Further, the Court hereby enters judgment in favor of Elizabeth Anne Harshaw and against Donald W. Harshaw [and] finds that this judgment should not be dischargeable in bankruptcy, since it is specifically awarded to the plaintiff as compensation, and for her support and maintenance[1], whether in full or in part, throughout the cohabitation of the parties herein.
>
> IT IS THEREFORE CONSIDERED, ORDERED, ADJUDGED AND DECREED that Elizabeth A. Harshaw is hereby awarded a judgment in the sum of Four Hundred Thirty-Five Thousand Dollars and 00/100 ($435,000.00) in her favor and against Defendant.

(*Id*. at 16–17). The Lake County Superior Court entered judgment on the arbitration award.

Don appealed the Arbitrator Order to the Indiana Court of Appeals. That court affirmed the order in an unpublished Memorandum Decision. (ECF No. 8-6).

**3.** *The Bankruptcy Proceeding*

Now owing nearly a half a million dollars to his ex-wife, Don declared bankruptcy. Liz did not object to Don's claimed exemption for his retirement account, nor did she file a Proof of Claim in Don's bankruptcy case. Instead, she filed an Adversary Complaint for Declaratory Judgment Determining Interst [sic] in Individual Retirement Accounts (ECF No. 8-3 at 1–4). The complaint alleged that, by virtue of the Arbitration Order, Liz had a "separate and non-dischargeable interest

---

[1] The parties stipulated below that, in fact, the Arbitration Order was not a non-dischargeable domestic support obligation for the purposes of 11 U.S.C. § 523(a)(5).

3

in Donald's IRA under Indiana law." (*Id*. at 4). Accordingly, Liz requested a declaration that the arbitration award "created a property interest in [Don's] retirement accounts that is not a 'debt' subject to discharge in bankruptcy." (*Id*.).

Following briefing by the parties, the bankruptcy court entered its Findings of Fact, Conclusions of Law, and Order on Plaintiff's Complaint for Declaratory Judgment (ECF No. 8-9). The bankruptcy court accepted Liz's argument that the issue should be evaluated using divorce law principles, stating "Indiana cases concerning the division of property within a marriage dissolution are quite instructive in this regard." (*Id*. at 8). Analyzing the issues in this light, the bankruptcy court found that Liz "possesses a sole and separate property interest in a portion of Donald's IRA that vested upon the issuance of the Arbitration Order entered by the Lake Superior Court, which occurred well before Donald filed his petition for bankruptcy relief." (*Id*. at 13–14). Having concluded that this property interest existed, the bankruptcy court found that the arbitration order judgment "is neither a debt owed by Donald that is subject to discharge in this case nor is it property of his bankruptcy estate under § 541." (*Id*. at 14).

**4.**   *The Instant Appeal*

Don timely appealed the bankruptcy court's order by filing a Notice of Appeal and Statement of Election in this Court. (ECF No. 1). The matter has been fully briefed (ECF Nos. 8, 11, 12) and is ripe for review.

**B.**   **Legal Argument**

**1.**   *Standard of Review*

In reviewing a bankruptcy court's decision pursuant to 28 U.S.C. § 158(a), the district court functions as an appellate court and is authorized to affirm, reverse, modify, or remand the bankruptcy court's ruling. Fed. R. Bankr. P. 8013. The standard for review of bankruptcy court

decisions depends upon the issue being reviewed. Findings of fact are upheld unless clearly erroneous, but legal conclusions are reviewed *de novo*. *Id.*; *In re Marrs–Winn*, 103 F.3d 584, 589 (7th Cir. 1996). The parties here dispute only the bankruptcy court's application of law, so this Court will use a *de novo* standard of review.

**2.**     ***The Bankruptcy Court Erred in Applying Indiana Marriage Dissolution Law***

The ultimate issue is whether the $435,000 judgment imposed by the arbitration order was a "debt" as the term is used in the bankruptcy code. The term "debt" means liability on a claim. 11 U.S.C. § 101(12). In turn, a "claim" is a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A).

While the definition of the terms comes from federal bankruptcy law, the existence of a debt, and the nature of an interest in property, comes from state law. *In re Allen*, 183 B.R. 519, 529 (Bankr. N.D. Ill 1994); *In re Krueger*, 192 F.3d 733, 737 (7th Cir. 1999). Accordingly, Indiana law must be consulted to determine what, if any, interest Liz was granted in Don's retirement account by virtue of the arbitration order.

The thrust of Liz's argument is that, while the state court case was not an action for dissolution of marriage, "it was very much akin to one." (ECF No. 11 at 7). This horseshoes and hand grenades argument is the exact same argument Liz made to the bankruptcy court. (ECF No. 8-8 at 5).[2] In line with this argument, Liz, and in turn the bankruptcy court, relied on two cases interpreting Indiana marriage dissolution law: *Paxton v. Paxton*, 709 N.E.2d 31 (Ind. Ct. App. 1999), and *In re Brown*, 249 B.R. 303 (Bankr. S.D. Ind. 2000). Each of these cases hold that, where

---

[2] Unfortunately, much of Liz's brief to this Court is little more than a cut-and-paste of her brief to the bankruptcy court. (*Cf.* ECF Nos. 8-8, 11). This includes one page that was cut and pasted twice. (ECF No. 11 at 9, 10). The result is that Liz's brief largely fails to respond to, or even acknowledge, many of the arguments presented in Don's brief.

5

a dissolution court allocates part or all of a retirement account, a property interest is created in favor of the individual receiving the allocation. 709 N.E.2d at 33; 249 B.R. at 308.

The problem with this analysis is that the line of Indiana cases creating the very cause of action upon which Liz prevailed make plain that the cause is wholly separate from divorce remedies. In *Glasgo v. Glasgo*, 410 N.E.2d 1325 (Ind. Ct. App. 1980), the only case cited by the Arbitration Order, the court of appeals reviewed a trial court's order refusing to dismiss a suit claiming breach of an oral contract by a non-married cohabitant. The defendant contended that "claims by nonmarried cohabitants are against public policy in Indiana since the legislature has prohibited common law marriages." *Id*. at 1327.

The court of appeals' decision is clear that, while such a claim existed, it was not a claim for dissolution. "Claims brought as a common law spouse under the current Indiana dissolution of marriage or intestate succession statutes would clearly not be actionable. The current claim as we have pointed out above is not one of these." *Id*. at 1331. Although marriage statutes did not apply, the court of appeals found that recovery could be based "upon legally viable contractual and/or equitable grounds which the parties could establish according to their own particular circumstances." *Id*.

*Glasgo* was extended by subsequent decisions. In *Bright v. Kuehl*, 650 N.E.2d 311 (Ind. Ct. App. 1995), the court of appeals found that cohabitants were not limited to express contractual theories but could also recover under "a viable equitable theory such as an implied contract or unjust enrichment." *Id*. at 315. The court of appeals confirmed *Bright* as the law in *McMahel v. Deaton*, 61 N.E.3d 336, 346 (Ind. Ct. App. 2016) ("we decline McMahel's invitation to reconsider the holding in *Bright* or other cases regarding the equitable remedies available to Indiana courts in addressing claims by formerly cohabitating persons based upon the theories of implied contract

and unjust enrichment."). Taken as a whole, these cases stand for the proposition that an action by an unmarried cohabitant under divorce law is "clearly not" actionable, but an action brough under express or implied contract theories would be.

This distinction is important because it shapes the remedies available to an unmarried cohabitant. A court's division of marital property is governed by statute. *Maloblocki v. Maloblocki*, 646 N.E.2d 358, 362 (Ind. Ct. App. 1995). Ind. Code § 31-15-7-4(b)(4) provides that a dissolution court "shall" divide vested retirement benefits "by setting aside to either of the parties a percentage of those payments either by assignment or in kind at the time of receipt." *See also Eads v. Eads*, 114 N.E.3d 868, 875 (Ind. Ct. App. 2018) (providing the mathematical formulae for determining division percentages). This is consistent with a dissolution court's duty to "divide the property of the parties." I.C. § 31-15-7-4(a).

Division of property is not available to unmarried cohabitants. Limited to contractual and quasi-contractual remedies, individuals like Liz are limited to "restitution" for the measurable benefit provided to the defendant. *Estate of Henry v. Woods*, 77 N.E.3d 1200, 1204 (Ind. Ct. App. 2017). This means that, rather than assign interests in property, courts awarding relief for unjust enrichment enter monetary judgments representing the value of the services provided. *See*, *e.g.*, *Neibert v. Perdomo*, 54 N.E.3d 1046, 1052 (Ind. Ct. App. 2016); *Kelly v. Levandoski*, 825 N.E.2d 850, 860 (Ind. Ct. App. 2005) (where unjust enrichment is shown, "the courts permit recovery of the value of the services rendered just as if there had been a true contract.").

Of course, a money judgment is only worth the paper it is written on until collection has occurred. If the defendant has the money to satisfy the judgment, satisfaction can be made by "payment of money owing under and following a judgment . . . to the judgment creditor or his attorney." Ind. R. Tr. P. 67(B). Where, on the other hand, a defendant does not have the cash on

hand for full satisfaction, plaintiffs are forced to execute the judgment on the property of the judgment debtor. Ind. Code § 34-55-1-3. However, not all property is subject to execution. Relevant to the instant dispute, Indiana law expressly exempts "an interest, whether vested or not, that the debtor has in a retirement plan or fund." Ind. Code § 34-55-10-2(c)(6). Regardless of the size of the judgment, then, a defendant's retirement account cannot be attached in satisfaction of a money judgment.

With these principles in mind, the Court now turns to the language of the arbitration order. The arbitration order plainly provides for a money judgment: Liz was "awarded the sum of Four Hundred Thirty-Five Thousand Dollars & 00/100 ($435,000.00), plus post-judgment interest." (ECF No. 8-5 at 16). As Don correctly notes, under Indiana law this was necessarily a money judgment as post-judgment interest applies only to "judgments for money." Ind. Code § 24-4.6-1-101. Both the plain language of the arbitration order, and the legal effect of that language, demonstrates that the arbitrator intended to, and did, enter a money judgment on Liz's claim for unjust enrichment.

Unquestionably, the arbitrator only muddied the waters as he continued to write. Rather than simply enter judgment, the arbitrator went on to specify the ways in which the judgment could be satisfied. The arbitrator stated that defendant could pay the amount of the judgment "through assignment of his pension and/or retirement benefits; or by Qualified Domestic Relations Order (QDRO), to be approved and effectuated and ordered by the Court." (ECF No. 8-5 at 17). However, the only effect that this extraneous language had, or could have had, was to create the instant dispute. As noted above, assignment of Don's pension and/or retirement benefits is prohibited by statute. I.C. § 34-55-10-2(c)(6). Similarly, a QDRO is inappropriate in this case, as such an order must necessarily relate "to the provision of child support, alimony payments, or marital property

8

rights." 29 U.S.C. § 1056(d)(3)(B)(ii)(I). This means that, outside of the domestic relations context, courts have no power to enter or order QDROs. *See Kahn v. Kahn*, 801 F.Supp. 1237, 1246 (S.D.N.Y. 1992). Neither recommended payment method could have been used to satisfy the judgment the arbitrator had entered only sentences before.[3]

When the Court excises the "superfluous" language from the arbitration order (*see* ECF No. 8-6 at 8), it is left with a run-of-the-mill money judgment. As such, the Court concludes that the arbitration order created nothing more than a debt owed to Liz by Don. The bankruptcy court's decision to the contrary, based on inapplicable divorce law, constitutes legal error.

**C.    Conclusion**

What is clear to the Court is that the arbitrator did not like Don. He spent pages and pages documenting his trespasses against Liz and attempted to formulate a judgment Don would have no choice but to satisfy. Dislike, however, is not a basis to order remedies that have no basis in the law. Instead, the arbitrator was limited to those remedies available under the claims Liz presented. The bankruptcy court's judgment below interpreted the arbitration order in a way that exceeded those remedies. Accordingly, the bankruptcy court's March 29, 2019, judgment (ECF No. 8-9) is REVERSED and REMANDED.

SO ORDERED on February 4, 2021.

      s/ Holly A. Brady
JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT

---

[3] The Court recognizes that, generally, an arbitration award is not objectionable on the ground that the arbitrator misinterpreted applicable law. *Nat'l R.R. Passenger Corp. v. Chesapeake & O. Ry. Co.*, 551 F.2d 136, 143 (7th Cir. 1977). However, Liz does not argue this as a basis for upholding the domestic relations portions of the Arbitration Order. Moreover, without a copy of the agreement to arbitrate, the Court cannot decide whether the legally incorrect portions of the order were within the scope of the arbitrator's powers. If they were not, this would be an independent reason to challenge those portions of the Arbitration Order. *See* Ind. Code § 34-57-1-17(3).